UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERALD W. KLEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>KANDI TECHNOLOGIES GROUP, INC., HU XIAOMING, WANG CHENG, and ZHU XIAOYING,<br><br>Defendants. | **Civil Action:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Gerald W. Klein ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through its attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Kandi Technologies Group, Inc. ("Kandi" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired Kandi securities between

May 12, 2014 and March 13, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Kandi, through its subsidiaries, designs, produces, manufactures, and distributes electric vehicles (EVs) products, EV parts, and off-road vehicles in the People's Republic of China and internationally.  Kandi's EV parts comprise battery packs, body parts, EV drive motors, EV controllers, air conditioning units, and other auto parts.

3.      Founded in 2002, the Company was formerly known as "Kandi Technologies, Corp." and changed its name to Kandi Technologies Group, Inc. in December 2012.  Kandi's stock trades on the NASDAQ under the ticker symbol "KNDI."

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) certain areas in the Company's previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 required adjustment; (ii) in turn, the Company lacked effective internal controls over financial reporting; and (iii) as a result of the foregoing, Kandi's public statements were materially false and misleading at all relevant time.

5.      On November 14, 2016, the Company announced the abrupt resignation of Cheng Wang, the Company's Chief Financial Officer ("CFO") at the time.

6.      On this news, Kandi's share price fell $0.40, or over 10%, to close at $3.50 on November 14, 2016.

7.     On March 13, 2017, Kandi filed a Current Report on Form 8-K with the SEC, announcing that the Company would restate previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016.  The Company stated, in relevant part:

**Item 4.02 Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**.

(a) During the course of Kandi Technologies Group, Inc.'s (the "Company") preparation of its Annual Report on Form 10-K for the year ended December 31, 2016, and during preparation of responses to comments from the staff of the Securities and Exchange Commission ("SEC"), Division of Corporate Finance, *the Company's management identified certain areas in the Company's previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 (the "Previously Issued Financial Statements"), that require adjustment as described below and in more detail in the Company's annual report on Form 10-K/A for the fiscal year ended December 31, 2015 ("Form 10-K/A"), to be filed with the SEC.  As a result, on March 7, 2017, the board of directors (the "Board") of the Company, based on the recommendation of the Company's audit committee, and in consultation with management, concluded that the Company's Previously Issued Financial Statements should no longer be relied upon. The Company will, in the Form 10-K/A, restate the Previously Issued Financial Statements, which restatement will include separate audited financial statements for the JV Company (the "Restatements")*.  The Restatements will have no effect on the net income of the Company as reported in the Previously .Issued Financial Statements.   The Company will endeavor to file its Annual Report on Form 10-K for the fiscal year ended December 31, 2016, pursuant to SEC's rules (including timing guidelines), and will file the Form 10-K/A as soon as practicably possible.

The Restatements will include separate audited financial statements for the Company's equity investment in the JV Company, corrections to the classification of notes receivable and notes payable in the Company's statements of cash flow, revisions in the Company's financial statement presentation to separately identify certain  related party accounts  on the face of the

Balance Sheets and the Consolidated Statements of Income (Loss) and Comprehensive Income (Loss), certain amendments to Note 20 – Taxes of the Notes to the Company's Consolidated Financial Statements, the adjustment of previously recorded construction-in-progress back to prepayment in Note 16 - Construction-in- Progress of the Notes to the Company's Consolidated Financial Statements, expansions of two tables of sales to and purchases from the JV Company in Note 24 - Summarized Information of Investment in the JV Company of the Notes to the Company's Consolidated Financial Statements from two years to three years, and the removal of "unaudited" labels from certain tables in Note 20 - Taxes of the Notes to the Company's Consolidated Financial Statements.

The Company will also amend its unaudited quarterly data for the first three quarters ended December 31, 2016, as set forth in its upcoming Annual Report on Form 10-K for the year ended December 31, 2016. The Company has not filed and does not intend to file amendments to its Quarterly Reports on Form 10- Q for the quarterly periods affected. Accordingly, investors should no longer rely upon the Company's previously released financial statements for those periods or any earnings releases or other communications relating to those periods. The Company's Quarterly Reports on Form 10-Q for fiscal year 2017 will include restated results for the corresponding interim periods of fiscal year 2016.

In addition, in conjunction with the Restatements, the Company is reassessing its internal controls over its financial reporting and compliance programs. The result of this reassessment could lead the Company to conclude that there were deficiencies in its internal controls over financial reporting that constitute material weaknesses and could therefore affect its conclusions regarding effectiveness as previously expressed in Item 9A, Controls and Procedures, of the Company's Annual Report on Form 10-K for the year ended December 31, 2015. Accordingly, management's report on internal controls over financial reporting as of December 31, 2015, and the associated report of AWC (CPA) Limited, the Company's former principal accountant ("AWC"), should no longer be relied upon. The Public Company Accounting Oversight Board revoked the registration of AWC on May 18, 2016. The Company dismissed AWC and engaged BDO China Shu Lun Pan Certified Public Accountants LLP ("BDO China") as its new independent registered public accounting firm on April 12, 2016, as previously reported. The Company is committed to maintaining

an effective control environment and making all necessary changes to enhance control effectiveness.

The chair of the Company's audit committee, on behalf of the audit committee, and the management have discussed the matters disclosed in this Item 4.02(a) of this Current Report on Form 8-K with BDO China.   (Emphasis added.)

8.      On this news, Kandi's share price fell $0.30, or approximately 6%, to close at $4.05 on March 14, 2017.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to §§ 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

12.     Venue is properly laid in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b).  Kandi's stock trades under the NASDAQ, located within this District, and the Company maintains offices in this District.

13.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14.    Plaintiff, as set forth in the attached Certification, acquired Kandi securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.    Defendant Kandi is a Delaware corporation headquartered in Jinhua city, Zhejiang Province, China, and offices also located at 230 Park Avenue, 10th Floor, New York, New York 10169. Kandi's shares trade on the NASDAQ under the ticker symbol "KNDI."

16.    *Defendant Xiaoming Hu* ("Hu") has served as the Company's Chief Executive Officer ("CEO"), President and Chairman of the Board since June 2007.

17.    *Defendant Bing Mei* ("Mei") has served as the Company's CFO since November 14, 2016.

18.    *Defendant Xiaoying Zhu* ("Zhu") served as the Company's CFO from June 2007 until her resignation on April 30, 2015.

19.    *Defendant Cheng Wang* ("Wang") served as the Company's CFO and Principal Financial and Accounting Officer from May 1, 2015 until his resignation, effective November 14, 2016.

20.    Defendants referenced above in ¶¶ 16-19 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.    Kandi, through its subsidiaries, designs, produces, manufactures, and distributes electric vehicles (EVs) products, EV parts, and off-road vehicles in the People's Republic of

China and internationally.  Kandi's EV parts comprise battery packs, body parts, EV drive motors, EV controllers, air conditioning units, and other auto parts.

## MATERIALLY FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

22.    On May 12, 2014, Kandi filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2014 (the "Q1 2014 10-Q").  It was in this Q1 2014 10-Q that the Company stated in relevant part:

**Evaluation of Disclosure Controls and Procedures**

The Company has evaluated, under the supervision of the Company's Chief Executive Officer and the Chief Financial Officer, the effectiveness of disclosure controls and procedures as of March 31, 2014. This is done in order to ensure that information the Company is required to disclose in reports that are filed or submitted under the Securities Exchange Act of 1934, as amended (the "Exchange Act") is: (i) recorded, processed, summarized and reported within the time periods specified in SEC rules and forms and (ii) accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding disclosure.

Based on this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the Company's disclosure controls and procedures were not effective as of March 31, 2014, due to significant deficiencies in internal controls, which, in the aggregate, lead to a conclusion that a material weakness exists in the control environment as follows:

1. Lack of adequate policies and procedures in internal audit function, which may potentially result in: (1) lack of communication between internal audit department and the Audit Committee and the Board of Directors; (2) insufficient internal audit work to ensure that the Company's policies and procedures have been carried out as planned.

2. There was no self-assessment performed by the Audit Committee to assess the effectiveness of the Audit Committee in oversight of management.

3.  Inadequate design of internal controls over the approval procedures for related party transactions.

23.    The Q1 2014 10-Q contained signed certifications pursuant to the SOX by Defendants Hu and Wang, stating that the financial information contained in the Q1 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

24.    On August 8, 2014, Kandi filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2014 (the "Q2 2014 10-Q"). It was in this Q1 2014 10-Q that the Company stated in relevant part:

**Evaluation of Disclosure Controls and Procedures**

We have evaluated, under the supervision of our Chief Executive Officer and our Chief Financial Officer, the effectiveness of disclosure controls and procedures as of June 30, 2014. This is done in order to ensure that information we are required to disclose in reports that are filed or submitted under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), is: (i) recorded, processed, summarized and reported within the time periods specified in SEC rules and forms and (ii) accumulated and communicated to our management, including our Chief Executive Officer and our Chief Financial Officer, as appropriate, to allow timely decisions regarding disclosure.

Based on this evaluation, our Chief Executive Officer and our Chief Financial Officer concluded that our disclosure controls and procedures were not effective as of June 30, 2014, due to significant deficiencies in internal controls, which, in the aggregate, lead to a conclusion that a material weakness exists in the control environment as follows:

1.  We have a lack of adequate policies and procedures in internal audit function, which may potentially result in: (1) lack of communication between our internal audit department and the Audit Committee and our Board of Directors; (2) insufficient internal audit work to ensure that our policies and procedures have been carried out as planned.

8

2. There was no self-assessment performed by the Audit Committee to assess the effectiveness of its in oversight of management.

3. We have an inadequate design of internal controls over the approval procedures for related-party transactions.

25. The Q2 2014 10-Q contained signed certifications pursuant to the SOX by Defendants Hu and Wang, stating that the financial information contained in the Q2 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

26. November 10, 2014, Kandi filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2014 (the "Q3 2014 10-Q"). It was in this Q1 2014 10-Q that the Company stated in relevant part:

**Evaluation of Disclosure Controls and Procedures**

We have evaluated, under the supervision of our Chief Executive Officer ("CEO") and our Chief Financial Officer ("CFO"), the effectiveness of disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act")) as of September 30, 2014. Based on this evaluation, our CEO and CFO concluded that as of the end of the period covered by this report, our disclosure controls and procedures were effective.

Disclosure controls and procedures are controls and other procedures that are designed to ensure that information required to be disclosed in our reports filed or submitted under the Exchange Act (a) is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms and (b) is accumulated and communicated to management, including our CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure. Our management recognizes that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving their objectives and management necessarily applies its judgment in evaluating the cost-benefit relationship of possible controls and procedures. Our

disclosure controls and procedures are designed to provide reasonable assurance of achieving their objectives as described above.

27.     The Q3 2014 10-Q contained signed certifications pursuant to the SOX by Defendants Hu and Wang, stating that the financial information contained in the Q3 2014 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

28.     On March 16, 2015, when Kandi filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter ended December 31, 2014 (the "2014 10-K").   For the quarter, Kandi reported net income of $1.67 million, or $0.04 per diluted share, on revenue of $52.89 million, compared to a net loss of $14.64 million, or $0.37 per diluted share, on revenue of $50.57 million for the same period in the prior year. For 2014, Kandi reported net income of $12.27 million, or $0.29 per diluted share, on revenue of $170.23 million, compared to a net loss $21.14 million, or 0.61 per diluted share, on revenue of $94.54 million for 2013.

29.     In the 2014 10-K, the Company disclosed in relevant part:

Item 9A. Controls and Procedures.

(a)     Evaluation of Disclosure Controls and Procedures

The Company has evaluated, under the supervision of the Company's Chief Executive Officer and the Chief Financial Officer, the effectiveness of disclosure controls and procedures as of December 31, 2014. This is done in order to ensure that information the Company is required to disclose in reports that are filed or submitted under the Securities Exchange Act of 1934, as amended (the "Exchange Act") is: (i) recorded, processed, summarized and reported within the time periods specified in SEC rules and forms and (ii) accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding disclosure.

Based on this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the Company's disclosure controls and procedures were effective as of December 31, 2014.

(b)    Management's Annual Report on Internal Control Over Financial Reporting

Our management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under Exchange Act. The Company's internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with U.S. generally accepted accounting principles

The Company's internal control over financial reporting includes those policies and procedures that (i) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company; (ii) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the Company are being made only in accordance with authorizations of management and directors of the Company; and (iii) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the Company's assets that could have a material effect on the consolidated financial statements.

All internal control systems, no matter how well designed, have inherent limitations, so that no evaluation of controls can provide absolute assurance that all control issues are detected. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate. Therefore, any current evaluation of controls cannot and should not be projected to future periods.

Management conducted an assessment of the effectiveness of our system of internal control over financial reporting as of December 31, 2014, the last day of our fiscal year. This assessment was based on criteria established in the framework Internal Control—Integrated Framework (2013), issued by the Committee of

Sponsoring Organizations of the Treadway Commission ("COSO") and included an evaluation of elements such as the design and operating effectiveness of key financial reporting controls, process documentation, accounting policies, and our overall control environment. Based on management's evaluation under the 2013 COSO framework, management concluded that the Company's internal controls over financial reporting were effective as of December 31, 2014. (Emphasis added.)

30.     The 2014 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Hu and Zhu, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

31.     On May 11, 2015, Kandi filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2015 (the "Q1 2015 10-Q"). For the quarter, Kandi reported net income of $6.13 million, or $0.13 per diluted share, on revenue of $43.78 million, compared to a net loss of $14.09 million, or $0.36 per diluted share, on revenue of $40.17 million for the same period in the prior year.

32.     In the Q1 2015 10-Q, the Company stated in relevant part:

**Evaluation of Disclosure Controls and Procedures**

We have evaluated, under the supervision of our Chief Executive Officer ("CEO") and our Chief Financial Officer ("CFO"), the effectiveness of disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act")) as of March 31, 2015. Based on this evaluation, our CEO and CFO concluded that as of the end of the period covered by this report, our disclosure controls and procedures were effective.

Disclosure controls and procedures are controls and other procedures that are designed to ensure that information required to be disclosed in our reports filed or submitted under the Exchange Act (a) is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms and (b) is accumulated and communicated to management, including our

CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure. Our management recognizes that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving their objectives and management necessarily applies its judgment in evaluating the cost-benefit relationship of possible controls and procedures. Our disclosure controls and procedures are designed to provide reasonable assurance of achieving their objectives as described above.

**Changes in Internal Control over Financial Reporting**

There was no change to our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting. (Emphasis added.)

33.    The Q1 2015 10-Q contained signed certifications pursuant to the SOX by Defendants Hu and Wang, stating that the financial information contained in the Q1 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

34.    On August 10, 2015, Kandi filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2015 (the "Q2 2015 10-Q"). For the quarter, Kandi reported net income of $5.43 million, or $0.12 per diluted share, on revenue of $47.96 million, compared to net income of $11.16 million, or $0.27 per diluted share, on revenue of $32.96 million for the same period in the prior year.

35.    In the Q2 2015 10-Q, the Company stated in relevant part:

**Evaluation of Disclosure Controls and Procedures**

We have evaluated, under the supervision of our Chief Executive Officer ("CEO") and our Chief Financial Officer ("CFO"), the effectiveness of disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act")) as of June 30, 2015.

Based on this evaluation, our CEO and CFO concluded that as of the end of the period covered by this report, our disclosure controls and procedures were effective.

Disclosure controls and procedures are controls and other procedures that are designed to ensure that information required to be disclosed in our reports filed or submitted under the Exchange Act (a) is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms and (b) is accumulated and communicated to management, including our CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure. Our management recognizes that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving their objectives and management necessarily applies its judgment in evaluating the cost-benefit relationship of possible controls and procedures. Our disclosure controls and procedures are designed to provide reasonable assurance of achieving their objectives as described above.

**Changes in Internal Control over Financial Reporting**

There was no change to our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

36.     The Q2 2015 10-Q contained signed certifications pursuant to the SOX by Defendants Hu and Wang, stating that the financial information contained in the Q2 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

37.     On November 9, 2015, Kandi filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2015 (the "Q3 2015 10-Q").   For the quarter, Kandi reported net income of $2.34 million,  or $0.05 per diluted share, on revenue of $50.53 million, compared to net income of $13.53 million,

or $0.31 per diluted share, on revenue of $44.21 million for the same period in the prior year.  In the Q3 2015 10-Q, the Company stated in relevant part:

### Evaluation of Disclosure Controls and Procedures

We have evaluated, under the supervision of our Chief Executive Officer ("CEO") and our Chief Financial Officer ("CFO"), the effectiveness of disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act")) as of September 30, 2015. Based on this evaluation, our CEO and CFO concluded that as of the end of the period covered by this report, our disclosure controls and procedures were effective.

Disclosure controls and procedures are controls and other procedures that are designed to ensure that information required to be disclosed in our reports filed or submitted under the Exchange Act (a) is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms and (b) is accumulated and communicated to management, including our CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure. Our management recognizes that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving their objectives and management necessarily applies its judgment in evaluating the cost-benefit relationship of possible controls and procedures. Our disclosure controls and procedures are designed to provide reasonable assurance of achieving their objectives as described above.

### Changes in Internal Control over Financial Reporting

There was no change to our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

38.    The Q3 2015 10-Q contained signed certifications pursuant to the SOX by Defendants Hu and Wang, stating that the financial information contained in the Q3 2015 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

39.    On March 14, 2016, Kandi filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter ended December 31, 2015 (the "2015 10-K"). For the quarter, Kandi reported net income of $770,000, or $0.02 per diluted share, on revenue of $58.80 million, compared to net income of $1.67 million, or $0.04 per diluted share, on revenue of $52.89 million for the same period in the prior year. For 2015, Kandi reported net income of $14.67 million, or $0.31 per diluted share, on revenue of $201.07 million compared to net income of $12.27 million, or $0.29 per diluted share, on revenue of $170.23 million for 2014.

40.    In the 2015 10-K, the Company stated, in relevant part:

**Item 9A. Controls and Procedures.**

(a)    Evaluation of Disclosure Controls and Procedures

The Company has evaluated, under the supervision of the Company's Chief Executive Officer and the Chief Financial Officer, the effectiveness of disclosure controls and procedures as of December 31, 2015. This is done in order to ensure that information the Company is required to disclose in reports that are filed or submitted under the Securities Exchange Act of 1934, as amended (the "Exchange Act") is: (i) recorded, processed, summarized and reported within the time periods specified in SEC rules and forms and (ii) accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding disclosure.

Based on this evaluation, the Chief Executive Officer and Chief Financial Officer concluded that the Company's disclosure controls and procedures were effective as of December 31, 2015.

(b)    Management's Annual Report on Internal Control Over Financial Reporting

Our management is responsible for establishing and maintaining adequate internal control over financial reporting as defined in Rules 13a-15(f) and 15d-15(f) under Exchange Act. The Company's internal control over financial reporting is designed to

provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with U.S. generally accepted accounting principles.

The Company's internal control over financial reporting includes those policies and procedures that (i) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the Company; (ii) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the Company are being made only in accordance with authorizations of management and directors of the Company; and (iii) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the Company's assets that could have a material effect on the consolidated financial statements.

All internal control systems, no matter how well designed, have inherent limitations, so that no evaluation of controls can provide absolute assurance that all control issues are detected. Also, projections of any evaluation of effectiveness to future periods are subject to the risk that controls may become inadequate because of changes in conditions, or that the degree of compliance with the policies or procedures may deteriorate. Therefore, any current evaluation of controls cannot and should not be projected to future periods.

Management conducted an assessment of the effectiveness of our system of internal control over financial reporting as of December 31, 2015, the last day of our fiscal year. This assessment was based on criteria established in the framework Internal Control—Integrated Framework (2013), issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") and included an evaluation of elements such as the design and operating effectiveness of key financial reporting controls, process documentation, accounting policies, and our overall control environment. Based on management's evaluation under the 2013 COSO framework, management concluded that the Company's internal controls over financial reporting were effective as of December 31, 2015. (Emphasis added.)

41.    The 2015 10-K contained signed certifications pursuant to the SOX by Defendants Hu and Wang, stating that the financial information contained in the 2015 10-K was

accurate and disclosed any material changes to the Company's internal control over financial reporting.

42.     On May 10, 2016, Kandi filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q"). For the quarter, Kandi reported net income of $90,000, or $0.00 per diluted share, on revenue of $50.66 million, compared to net income of $6.13 million, or $0.13 per diluted share, on revenue of $43.78 million for the same period in the prior year.

43.     In the Q1 2016 10-Q, the Company stated in relevant part:

**Evaluation of Disclosure Controls and Procedures**

We have evaluated, under the supervision of our Chief Executive Officer ("CEO") and our Chief Financial Officer ("CFO"), the effectiveness of disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act")) as of March 31, 2015. Based on this evaluation, our CEO and CFO concluded that as of the end of the period covered by this report, our disclosure controls and procedures were effective.

Disclosure controls and procedures are controls and other procedures that are designed to ensure that information required to be disclosed in our reports filed or submitted under the Exchange Act (a) is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms and (b) is accumulated and communicated to management, including our CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure. Our management recognizes that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving their objectives and management necessarily applies its judgment in evaluating the cost-benefit relationship of possible controls and procedures. Our disclosure controls and procedures are designed to provide reasonable assurance of achieving their objectives as described above.

**Changes in Internal Control over Financial Reporting**

> There was no change to our internal control over financial
> reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the
> Exchange Act) that occurred during the period covered by this
> report that have materially affected, or are reasonably likely to
> materially affect, our internal control over financial reporting.
> (Emphasis added.)

44.     The Q1 2016 10-Q contained signed certifications pursuant to the SOX by

Defendants Hu and Wang, stating that the financial information contained in the Q1 2016 10-Q

was accurate and disclosed any material changes to the Company's internal control over

financial reporting.

45.     On August 9, 2016, Kandi filed a quarterly report on Form 10-Q with the SEC,

announcing the Company's financial and operating results for the quarter ended June 30, 2016

(the "Q2 2016 10-Q"). For the quarter, Kandi reported net income of $2.79 million, or $0.06 per

diluted share, on revenue of $55.22 million, compared to net income of $5.43 million, or $0.12

per diluted share, on revenue of $47.96 million for the same period in the prior year.

46.     In the Q2 2016 10-Q, the Company stated in relevant part:

**Evaluation of Disclosure Controls and Procedures**

> We have evaluated, under the supervision of our Chief Executive
> Officer ("CEO") and our Chief Financial Officer ("CFO"), the
> effectiveness of disclosure controls and procedures (as such term is
> defined in Rules 13a-15(e) and 15d-15(e) under the Securities
> Exchange Act of 1934 (the "Exchange Act")) as of June 30, 2016.
> Based on this evaluation, our CEO and CFO concluded that as of
> the end of the period covered by this report, our disclosure controls
> and procedures were effective.

> Disclosure controls and procedures are controls and other
> procedures that are designed to ensure that information required to
> be disclosed in our reports filed or submitted under the Exchange
> Act (a) is recorded, processed, summarized and reported within the
> time periods specified in the SEC's rules and forms and (b) is
> accumulated and communicated to management, including our
> CEO and CFO, as appropriate, to allow timely decisions regarding
> required disclosure. Our management recognizes that any controls

and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving their objectives and management necessarily applies its judgment in evaluating the cost-benefit relationship of possible controls and procedures. Our disclosure controls and procedures are designed to provide reasonable assurance of achieving their objectives as described above.

**Changes in Internal Control over Financial Reporting**

There was no change to our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

47.    The Q2 2016 10-Q contained signed certifications pursuant to the SOX by Defendants Hu and Wang, stating that the financial information contained in the Q2 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

48.    On November 9, 2016, Kandi filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2016 (the "Q3 2016 10-Q"). For the quarter, Kandi reported a net loss of $570,000, or $0.01 per diluted share, on revenue of $6.37 million, compared to net income of $2.34 million, or $0.05 per diluted share, on revenue of $50.53 million for the same period in the prior year.

49.    In the Q3 2016 10-Q, the Company stated in relevant part:

Evaluation of Disclosure Controls and Procedures

We have evaluated, under the supervision of our Chief Executive Officer ("CEO") and our Chief Financial Officer ("CFO"), the effectiveness of disclosure controls and procedures (as such term is defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934 (the "Exchange Act")) as of September 30, 2016. Based on this evaluation, our CEO and CFO concluded that as of the end of the period covered by this report, our disclosure controls and procedures were effective.

20

Disclosure controls and procedures are controls and other procedures that are designed to ensure that information required to be disclosed in our reports filed or submitted under the Exchange Act (a) is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms and (b) is accumulated and communicated to management, including our CEO and CFO, as appropriate, to allow timely decisions regarding required disclosure. Our management recognizes that any controls and procedures, no matter how well designed and operated, can provide only reasonable assurance of achieving their objectives and management necessarily applies its judgment in evaluating the cost-benefit relationship of possible controls and procedures. Our disclosure controls and procedures are designed to provide reasonable assurance of achieving their objectives as described above.

**Changes in Internal Control over Financial Reporting**

There was no change in our internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the period covered by this report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting. (Emphasis added.)

50.    The Q3 2016 10-Q contained signed certifications pursuant to the SOX by Defendants Hu and Wang, stating that the financial information contained in the Q3 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting

51.    The statements referenced above were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) certain areas in the Company's previously issued financial statements for the years ended December 31, 2015 and 2014, and the first three quarters for the year ended December 31, 2016 required

adjustment; (ii) in turn, the Company lacked effective internal controls over financial reporting;

and (iii) as a result of the foregoing, Kandi's public statements were materially false and

misleading at all relevant times.

## THE TRUTH EMERGES

52.     On March 13, 2017, post market, Kandi filed a Current Report on Form 8-K with

the SEC, announcing that the Company would restate previously issued financial statements for

the years ended December 31, 2015 and 2014, and the first three quarters for the year ended

December 31, 2016. The Company stated, in relevant part:

> Item 4.02 Non-Reliance on Previously Issued Financial Statements
> or a Related Audit Report or Completed Interim Review.
>
> (a) During the course of Kandi Technologies Group, Inc.'s (the
> "Company") preparation of its Annual Report on Form 10-K for
> the year ended December 31, 2016, and during preparation of
> responses to comments from the staff of the Securities and
> Exchange Commission ("SEC"), Division of Corporate Finance,
> the Company's management identified certain areas in the
> Company's previously issued financial statements for the years
> ended December 31, 2015 and 2014, and the first three quarters for
> the year ended December 31, 2016 (the "Previously Issued
> Financial Statements"), that require adjustment as described below
> and in more detail in the Company's annual report on Form 10-
> K/A for the fiscal year ended December 31, 2015 ("Form 10-
> K/A"), to be filed with the SEC. As a result, on March 7, 2017, the
> board of directors (the "Board") of the Company, based on the
> recommendation of the Company's audit committee, and in
> consultation with management, concluded that the Company's
> Previously Issued Financial Statements should no longer be relied
> upon. The Company will, in the Form 10-K/A, restate the
> Previously Issued Financial Statements, which restatement will
> include separate audited financial statements for the JV Company
> (the "Restatements"). The Restatements will have no effect on the
> net income of the Company as reported in the Previously Issued
> Financial Statements. The Company will endeavor to file its
> Annual Report on Form 10-K for the fiscal year ended December
> 31, 2016, pursuant to SEC's rules (including timing guidelines),
> and will file the Form 10-K/A as soon as practicably possible.

The Restatements will include separate audited financial statements for the Company's equity investment in the JV Company, corrections to the classification of notes receivable and notes payable in the Company's statements of cash flow, revisions in the Company's financial statement presentation to separately identify certain related party accounts on the face of the Balance Sheets and the Consolidated Statements of Income (Loss) and Comprehensive Income (Loss), certain amendments to Note 20 – Taxes of the Notes to the Company's Consolidated Financial Statements, the adjustment of previously recorded construction-in-progress back to prepayment in Note 16 - Construction-in-Progress of the Notes to the Company's Consolidated Financial Statements, expansions of two tables of sales to and purchases from the JV Company in Note 24 - Summarized Information of Investment in the JV Company of the Notes to the Company's Consolidated Financial Statements from two years to three years, and the removal of "unaudited" labels from certain tables in Note 20 - Taxes of the Notes to the Company's Consolidated Financial Statements.

The Company will also amend its unaudited quarterly data for the first three quarters ended December 31, 2016, as set forth in its upcoming Annual Report on Form 10-K for the year ended December 31, 2016. The Company has not filed and does not intend to file amendments to its Quarterly Reports on Form 10- Q for the quarterly periods affected. Accordingly, investors should no longer rely upon the Company's previously released financial statements for those periods or any earnings releases or other communications relating to those periods. The Company's Quarterly Reports on Form 10-Q for fiscal year 2017 will include restated results for the corresponding interim periods of fiscal year 2016.

In addition, in conjunction with the Restatements, the Company is reassessing its internal controls over its financial reporting and compliance programs. The result of this reassessment could lead the Company to conclude that there were deficiencies in its internal controls over financial reporting that constitute material weaknesses and could therefore affect its conclusions regarding effectiveness as previously expressed in Item 9A, Controls and Procedures, of the Company's Annual Report on Form 10-K for the year ended December 31, 2015. Accordingly, management's report on internal controls over financial reporting as of December 31, 2015, and the associated report of AWC (CPA) Limited, the Company's former principal accountant ("AWC"), should no longer be relied upon. The Public Company Accounting Oversight

Board revoked the registration of AWC on May 18, 2016. The Company dismissed AWC and engaged BDO China Shu Lun Pan Certified Public Accountants LLP ("BDO China") as its new independent registered public accounting firm on April 12, 2016, as previously reported. The Company is committed to maintaining an effective control environment and making all necessary changes to enhance control effectiveness.

The chair of the Company's audit committee, on behalf of the audit committee, and the management have discussed the matters disclosed in this Item 4.02(a) of this Current Report on Form 8-K with BDO China.

53.    On this news, Kandi's share price fell $0.30, or approximately 6%, to close at $4.05 on March 14, 2017.

54.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

55.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Kandi securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

56.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Kandi securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds

or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Kandi or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

57.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

58.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

59.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Kandi;

- whether the Individual Defendants caused Kandi to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Kandi securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

60.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

61.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Kandi securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Kandi securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

62.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

63.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

64.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65.    This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

66.    During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to

defraud in connection with the purchase and sale of securities. Such scheme was intended to, and throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Kandi securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Kandi securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

67.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Kandi securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Kandi's finances and business prospects.

68.    By virtue of their positions at Kandi, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

69.    Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Kandi, the Individual Defendants had knowledge of the details of Kandi's internal affairs.

70.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Kandi. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Kandi's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Kandi securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Kandi's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Kandi securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

71.    During the Class Period, Kandi securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Kandi securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise

acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Kandi securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Kandi securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

72.    By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

73.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

74.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75.    During the Class Period, the Individual Defendants participated in the operation and management of Kandi, and conducted and participated, directly and indirectly, in the conduct of Kandi's business affairs. Because of their senior positions, they knew the adverse non-public information about Kandi's misstatement of income and expenses and false financial statements.

76.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Kandi's financial condition and results of operations, and to correct promptly any public statements issued by Kandi which had become materially false or misleading.

77.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to and did control the contents of the various reports, press releases and public filings which Kandi disseminated in the marketplace during the Class Period concerning Kandi's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Kandi to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Kandi within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Kandi securities.

78.    Each of the Individual Defendants, therefore, acted as a controlling person of Kandi. By reason of their senior management positions and/or being directors of Kandi, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Kandi to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Kandi and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

79.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Kandi.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: April 21, 2017

GAINEY McKENNA & EGLESTON

By: _____
       Gregory M. Egleston
Thomas J. McKenna
440 Park Avenue South
New York, NY  10016
Telephone: (212) 983-1300
Facsimile: (212) 983-0380
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF

I, GERALD W. KLEIN ("Plaintiff") hereby retain the firm Gainey McKenna & Egleston and such co-counsel it deems appropriate to associate with, subject to their investigation, to pursue my claims on a contingent fee basis and for counsel to advance the costs of the case, with no attorneys fee owing except as may be awarded by the court at the conclusion of the matter and paid out of any recovery obtained and I also hereby declare the following as to the claims asserted under the law that:

Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

Plaintiff reviewed a copy of the complaint and is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

Plaintiff's transactions in **Kandi Technologies Group, Inc. (KNDI)** security that is subject of this action during the Class Period are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| SEE ATTACHMENT — KNDI LOSSES | | | | |
| | | | | |
| | | | | |
| | | | | |

**Please list other transactions on a separate sheet of paper, if necessary.**

Plaintiff has sought to serve as a class representative in the following cases within the last three years:

Plaintiff will not accept any payment serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of MARCH , 2017

_____
Signature

GERALD W. KLEIN
Print Name (& Title if applicable)